2008 UT App 70

**Gene DECKER, Plaintiff and Appellant,**

v.

**Nanette ROLFE, Defendant and Appellee.**

No. 20070210–CA.

Court of Appeals of Utah.

March 6, 2008.

Jason A. Schatz, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Nancy L. Kemp, asst. atty. gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., BENCH and ORME, JJ.

## OPINION

BENCH, Judge:

¶ 1 Appellant Gene Decker appeals the decision of the district court upholding the administrative suspension of his driver license for refusing to take a breath test. We conclude that the district court did not err by finding that Decker's decision to refuse the test was informed and voluntary because Decker understood the consequences of refusing the test. We therefore affirm.

## BACKGROUND

¶ 2 On May 21, 2006, Decker was the driver in a single-car automobile accident in Butterfield Canyon. Salt Lake County Deputy Sheriff Steve Marshall (the Deputy) responded to the scene. Upon arriving, the Deputy smelled the odor of alcohol emanating from the wrecked car and Decker. The Deputy noticed that Decker's "speech was slow and his balance was poor." Decker admitted to having four beers before driving. After administering multiple field sobriety tests, the

Deputy placed Decker under arrest for driving under the influence of alcohol (DUI) and transported him to the Special Operations Division of the Salt Lake County Sheriff's Office, a trip of approximately one hour.

¶3 During the car ride to the sheriff's office, Decker was hand-cuffed and seated in the front seat next to the Deputy. Decker repeatedly asked questions about what the Deputy would do if he, like Decker, was facing a breath test at the sheriff's office. Reluctantly, the Deputy finally told Decker that he would not take the test. Throughout the conversation, the Deputy repeatedly explained to Decker the consequences of refusing the breath test.

¶4 When they arrived at the sheriff's office, the Deputy requested that Decker take a breath test and informed Decker of the consequences should the test results show that Decker had an unlawful amount of alcohol or a controlled substance in his body. Decker refused to take the test. The Deputy then read Decker the proper warnings associated with refusing to take a requested test, informing Decker that his driving privileges could be revoked or suspended for refusing to take the breath test. Decker still refused to take the test and was served with a copy of the Driver License Division's (the Division) notice of intent to suspend or revoke his license. The notice stated that Decker had ten days to request, in writing, an administrative hearing on the matter.

¶5 On June 5, 2006, after the ten-day deadline had passed, Decker sent the Division a written request for a hearing. On June 8, 2006, the Division sent Decker a letter denying his request as untimely and informing him of the impending suspension of his license. The letter stated that "[t]he suspension of your Utah driving privilege will automatically take place on the 30th day after the date of your arrest." Further, the letter informed Decker that he "may appeal this action in the district court in the county in which the offense occurred within thirty (30) days of the effective date of [the] suspension."

¶6 A week later, on June 14, 2006, the · Division sent Decker a second letter stating that his license would be suspended effective June 20, 2006. Despite including permissive language to describe Decker's option to request reconsideration through the Division, this second letter stated that it "d[id] not replace any prior notice already in effect." Decker filed his petition for judicial review with the district court on July 12, 2006.

¶7 In the district court, neither party raised the issue of whether the court had jurisdiction to review the administrative decision. The district court proceeded to conduct a trial de novo and upheld the suspension of Decker's driver license. The district court ruled that the Deputy's so-called "advice" had no legal effect on the voluntary and informed nature of Decker's refusal to take the breath test. Decker now appeals that decision. The Division contends, for the first time on appeal, that the district court lacked subject matter jurisdiction to review the Division's decision because Decker failed to exhaust his administrative remedies.

## ISSUES AND STANDARDS OF REVIEW

¶8 The Division challenges the district court's jurisdiction to conduct a review of the administrative suspension of Decker's driver license. We will consider this issue despite the Division's failure to argue it below because "[q]uestions of subject matter jurisdiction ... may be raised at any time and are addressed before resolving other claims." *State v. Sun Sur. Ins. Co.*, 2004 UT 74, ¶7, 99 P.3d 818. "The determination of whether a court has subject matter jurisdiction is a question of law." *Beaver County v. Qwest, Inc.*, 2001 UT 81, ¶8, 31 P.3d 1147.

¶9 Decker's sole claim on appeal is that the district court erred by finding that his refusal to take the breath test was voluntary and not tainted by the Deputy's answers to Decker's questions about what the Deputy would do if he were in Decker's place. Our review of a trial de novo on a driver license suspension is "deferential to the trial court's view of the evidence unless the trial court has misapplied principles of law or its findings are clearly against the weight of the evidence." *Lopez v. Schwendiman*, 720 P.2d 778, 780 (Utah 1986); *see also Garcia v. Schwendiman*, 645 P.2d 651, 652 (Utah 1982).

## ANALYSIS

### I. Jurisdiction

¶ 10 The Division argues that Decker's failure to timely request an administrative hearing divested the district court of jurisdiction because Decker did not exhaust his administrative remedies. Utah's Administrative Procedures Act permits aggrieved parties to seek judicial review only after exhausting all administrative remedies except in a limited number of circumstances, including when other pertinent statutes do not require exhaustion. *See* Utah Code Ann. § 63–46b–14(2) (2004). The applicable version of the statute governing judicial review of driver license revocations, Utah Code section 53–3–224, stated, without qualification, that "[a] person ... whose license has been cancelled, suspended, or revoked by the division may seek judicial review of the division's order." Utah Code Ann. § 53–3–224(1) (2002).[1] We have previously interpreted this version of section 53–3–224 to permit aggrieved parties to seek judicial review of the Division's orders cancelling, suspending, or revoking licenses regardless of whether such parties have fully exhausted their administrative remedies. *See, e.g., Gilley v. Blackstock,* 2002 UT App 414, ¶ 10, 61 P.3d 305 (stating that the petitioner, who did not receive a prerevocation hearing, could still have sought review in the district court if her administrative appeal to the district court had been filed within the thirty-day time limit).

¶ 11 Here, the Division suspended Decker's license. In response to Decker's untimely request for a hearing, the Division, in writing, denied his request and informed him that his license would be suspended. The letter also stated that Decker could "appeal this action in the district court in the county in which the offense occurred within thirty (30) days of the effective date of [his] suspension," without mentioning any requirement to seek further relief through the Division. A subsequent notice, the notice of suspension, discussed further possible action Decker could take for relief within the Division, but the notice expressly did not "replace any prior notice" Decker had received. Under the language of the statute in effect at the time and in light of the Division's instructions to Decker, we conclude that the district court had jurisdiction to review the Division's administrative action.

### II. Decker's Refusal to Take the Breath Test

¶ 12 Decker claims that the district court erred by finding that the legal viability of his refusal to take the test was not affected by the Deputy's answers to Decker's questions while being transported to the sheriff's office. Utah's implied consent law requires that arresting officers warn motorists suspected of driving under the influence who refuse to submit to chemical tests of the consequences of refusal. *See* Utah Code Ann. § 41–6a–520(2)(a) (Supp.2007). "An officer properly discharges his duty if he gives an explanation [of the consequences of refusal] that a person of reasonable intelligence, who is in command of his senses, would understand." *Muir v. Cox,* 611 P.2d 384, 386 (Utah 1980) (Stewart, J., concurring).

¶ 13 Here, the Deputy administered the proper admonitions, both before requesting Decker to take the test and after the initial refusal. While the Deputy's answers to Decker's questions may have been ill-advised, we agree with the district court that the Deputy sufficiently explained the consequences of refusal. The issue is not the subjective reason why Decker refused to take the test but, rather, the issue is whether the court made "findings with respect to the issue of the clarity with which the appellant was instructed as to his obligations and rights." *Holman v. Cox,* 598 P.2d 1331, 1335 (Utah 1979). The court here made the requisite findings when it noted that Decker initi-

---

1. Effective April 30, 2007, Utah Code section 53–3–224 was amended to read "[a] person ... whose license has been cancelled, suspended, or revoked by the division *following an administrative hearing* may seek judicial review of the division's order." Utah Code Ann. § 53–3–224(1) (2007) (emphasis added). This change to the statute seems to now require aggrieved persons to at least request an administrative hearing before the statute would permit them to seek judicial review. However, because this change did not take place until after the pertinent events of the instant case, the amended statute does not affect our analysis.

ated the conversation in question, that the Deputy resisted offering advice, and that the Deputy properly informed Decker, during the car ride and at the station, of the consequences of refusing the test. We agree with the district court that the Deputy's comments did not legally excuse or vitiate Decker's refusal.

## CONCLUSION

¶ 14 The district court had jurisdiction to conduct the trial de novo to review the Division's suspension of Decker's license because the pertinent statute, which has since been amended, allowed a party such as Decker to seek judicial review without exhausting his administrative remedies. The Division's own actions in encouraging Decker to seek judicial review support our interpretation of the statute. On the merits, Decker's claim fails because the Deputy, despite responding to queries for his personal opinion, sufficiently explained to Decker the consequences of not taking the test.

¶ 15 Affirmed.

¶ 16 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and GREGORY K. ORME, Judge.